Filed 2/7/24  Malaga County Water Dist. v. Central Valley Regional Water Quality Control Bd. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MALAGA COUNTY WATER DISTRICT,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CENTRAL VALLEY REGIONAL WATER QUALITY CONTROL BOARD,<br><br>Defendant and Respondent. | F084746<br><br>(Super. Ct. No. 16CECG03036)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

Costanzo & Associates and Neal E. Costanzo for Plaintiff and Appellant.

Rob Bonta, Attorney General, Robert W. Byrne, Assistant Attorney General, Russell B. Hildreth and Nhu Q. Nguyen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

This case arises out of a complex series of disputes between Malaga County Water District (Malaga) and the agencies involved in issuing and enforcing the permits necessary for Malaga to operate its waste treatment facility. In previous published and unpublished opinions, this court resolved several disputes between the parties across multiple litigations and remanded for further proceedings.[1] This appeal arises after one of those remands resulted in a renewed order granting Malaga's writ petition, vacating fines and fees totaling more than $1 million and remanding proceedings to the Central Valley Regional Water Quality Control Board (Water Quality Board). Following the appeal, remand, and subsequent ruling by the trial court, Malaga sought to recover its attorney fees and costs under Code of Civil Procedure section 1021.5.[2] The trial court denied this request on the ground Malaga failed to demonstrate its financial interest in the litigation was outweighed by the financial burden of litigating the case. Malaga appeals from this determination. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This case was originally remanded to the trial court to determine whether Malaga could demonstrate that the Water Quality Board's use of a void underground regulation—in the form of a standardized hearing procedure document—was prejudicial error requiring reversal of the imposed fines and a remand to the Water Quality Board for further proceedings. (*Malaga County Water Dist. v. Central Valley Regional Water Quality Control Bd.*, *supra*, 58 Cal.App.5th at pp. 442, 446.) If the error was found harmless, the trial court would then be obligated to consider various arguments raised by Malaga in its underlying writ petition that had not yet been resolved. (*Id.* at p. 446.)

---

[1] This appeal arises out of *Malaga County Water District v. Central Valley Regional Water Quality Control Board* (Super. Ct. Fresno County, 2018, No. 16CECG03036). Our prior opinion discussing the substantive arguments resulting in a remand for further proceedings can be found at *Malaga County Water Dist. v. Central Valley Regional Water Quality Control Bd.* (2020) 58 Cal.App.5th 418.

[2] All future statutory references are to the Code of Civil Procedure unless otherwise noted.

Malaga's original writ had alleged the prior administrative "hearing accorded to Malaga did not comport with due process" or the Administrative Procedures Act (APA; Gov. Code, § 11340 et seq.), the resulting decision was invalid because the findings were "not supported by substantial evidence, or any evidence at all," that the proceeding should have been barred by laches, and that Malaga could prove "there has been no violation of any approved pretreatment program, [waste discharge order], permit, or order," among other grounds. As a requested remedy, the writ sought an order setting aside the Water Quality Board's decision and for "preliminary and permanent injunctions against the issuance of any complaint" by the Water Quality Board against Malaga.

Following remand, the trial court took additional briefing and held a hearing related to the prejudicial error analysis. In a detailed and lengthy discussion, the court found multiple errors in the way in which the Water Quality Board conducted its hearing on the complaint against Malaga and concluded those errors deprived Malaga of its right to due process in a prejudicial way. The court thus granted the petition for writ of mandate and remanded to matter to the Water Quality Board "for further proceedings in accordance with the APA and its regulations."

Following this determination, Malaga moved for its attorney fees and costs under section 1021.5. The trial court ultimately rejected this request. Although the trial court found several factors required to grant the fee and cost award were met, it found the required " 'financial burden of private enforcement' element" was not. After setting out relevant case law, the court explained that "[p]rior to filing this action, Malaga was subject to a $1,036,728 civil penalty. As a result of Malaga's suit, it is no longer subject to a $1,036,728 civil penalty. The elimination of the penalty provides a real, direct and immediate financial benefit, even though the administrative proceeding will be reconvened and another, potentially larger, penalty could issue after a new hearing."

Relying on *Summit Media, LLC v. City of Los Angeles* (2015) 240 Cal.App.4th 171 and *Millview County Water Dist. v. State Water Resources Control Bd.* (2016)

3.

4 Cal.App.5th 759, the trial court concluded the value of the existing fines was the correct measure of Malaga's financial interest in the litigation, despite the lack of a potential financial award, because the value of Malaga's financial assets would have been dramatically reduced had they taken no action. Contrasted with Malaga's costs to litigate the case in the amount of $456,935.25, the court concluded "that the financial burden of private enforcement in this case does not warrant subsidizing Malaga's attorneys."

This appeal timely followed.

## DISCUSSION

The primary challenge raised by Malaga in this appeal concerns the court's determination that Malaga did not show the financial burden of private enforcement warranted a fee award in this case. Malaga's argument focuses on a claim that the trial court erred in its analysis and employed an improper legal standard because the case law recognizes that financial benefits "once removed from the outcome of the litigation" are speculative and cannot be considered. In doing so, Malaga makes assertions both that the trial court failed to properly apply the case law in this area and that the court abused its discretion in setting the potential value of Malaga's monetary gain.

### _Standard of Review and Applicable Law_

Section 1021.5 provides, in relevant part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

" 'Section 1021.5 codifies the "private attorney general" doctrine of attorney fees articulated in _Serrano v. Priest_ (1977) 20 Cal.3d 25 … and other judicial decisions.'

4.

[Citation.] The statute's purpose is to compensate with attorney fees 'litigants and attorneys who step forward to engage in public interest litigation when there are insufficient financial incentives to justify the litigation in economic terms.' " (*Broad Beach Geologic Hazard Abatement Dist. v. 31506 Victoria Point LLC* (2022) 81 Cal.App.5th 1068, 1095–1096.)

The dispute in this case arises under the factor stating, "the necessity and financial burden of private enforcement … are such as to make the award appropriate." (§ 1021.5, subd. (b).) "This requirement ' " 'really examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys.' " ' " (*Boatworks, LLC v. City of Alameda* (2019) 35 Cal.App.5th 290, 309 (*Boatworks*).) The first of these two issues is not contested in this case.

"In considering the second prong of this inquiry, financial burden on litigants, courts focus 'not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield.' [Citation.] Financial incentives may exist even where—as here—the plaintiff seeks no monetary award in the litigation. [Citation.] To weigh the costs and benefits, '[t]he trial court must first fix—or at least estimate—the monetary value of the benefits obtained by the successful litigants themselves.… Once the court is able to put some kind of number on the gains actually attained it must discount these total benefits by some estimate of the probability of success at the time the vital litigation decisions were made which eventually produced the successful outcome.' [Citation.] After approximating an estimated value of the case, the court then determines the cost of the litigation. [Citation.] Finally, the court 'place[s] the estimated value of the case beside the actual cost and make[s] the value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case …. [A] bounty will be appropriate except where the expected value of the litigant's own

monetary award exceeds by a substantial margin the actual litigation costs.' " (*Boatworks*, *supra*, 35 Cal.App.5th at p. 309, first, second, fourth, and fifth bracketed insertions added.)

"On appeal from an award of attorney fees under section 1021.5, ' "the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." ' " (*Serrano v. Stefan Merli Plastering Co., Inc.* (2011) 52 Cal.4th 1018, 1025–1026.)

### *The Trial Court Applied the Correct Legal Standard*

Malaga contends the trial court failed to apply the correct legal standard in this case because it did not recognize and apply an analytical concept from the case law that states financial incentives once removed from the actual litigation are too speculative to be counted. The concept appears to have been recently articulated in *Heron Bay Homeowners Assn. v. City of San Leandro* (2018) 19 Cal.App.5th 376 (*Heron Bay*).

In *Heron Bay*, the plaintiffs brought suit to prevent the installation of a wind turbine on fears that their property values would decrease if the installation went forward, a loss the trial court had recognized was uncertain. (*Heron Bay*, *supra*, 19 Cal.App.5th at p. 387.) Reviewing the prior case law and the facts before it, the appellate court found there was substantial evidence in the record to conclude that there were nonpecuniary interests for filing suit, the potential monetary value of any victory was uncertain, and the financial costs of litigation were properly detailed. (*Id.* at pp. 393–395.) As a general point, the court explained that the existence of evidence of a potential financial benefit in the form of property values remaining stable does not preclude a trial court from weighing that evidence and determining the alleged financial interest is too speculative to weigh against granting a fee request. (*Id.* at p. 395.)

6.

In the context of the specific facts underlying *Heron Bay*, the appellate court ultimately concluded that evidence amounting to speculative guesses at the amount of potential depreciation in property values was not strong enough to overcome proper evidence supporting a fee award in the form of substantial costs to litigate and an uncertain nature of relief given the relief sought was, at best, directions to conduct an environmental impact report before proceeding with the project. (*Heron Bay*, *supra*, 19 Cal.App.5th at p. 397.) Ultimately, the court's ruling was that evidence of speculative losses in property values from a future project were one step removed from the results of the litigation and therefore insufficient to overcome the legitimate evidence demonstrating that nonpecuniary interests and the costs of litigation outweighed the financial incentives for pursuing the litigation. (*Id.* at p. 395.)

In the cases underlying *Heron Bay* and those cited by Malaga in this litigation, the principle outlined in *Heron Bay* is consistently applied. No case holds that general evidence of financial interests is improper to consider, even if those interests relate to benefits separate from a financial recovery. Rather, the cases consistently hold that the trial court should consider whether the evidence is speculative or definitive in the context of the overall analysis and may discount evidence of speculative financial motivations for bringing suit. (See, e.g., *Early v. Becerra* (2021) 60 Cal.App.5th 726, 742 [trial court did not abuse discretion in concluding potential salary from elected position is too speculative a financial benefit where litigation only allowed plaintiff to remain on the ballot for election]; *Boatworks*, *supra*, 35 Cal.App.5th at pp. 309–310 [trial court did not abuse discretion in determining that winning challenge to ordinance setting development fees was no guarantee challenged fees or equivalent would not be charged at later date for potential project that had been repeatedly rejected and not yet approved]; *People v. Investco Management & Development LLC* (2018) 22 Cal.App.5th 443, 470 [trial court did not abuse discretion in determining litigants that successfully opposed motion to stay separate cases but won no guarantee they ultimately would win those litigations "did not

7.

avoid any loss of money or value to their assets or investments by specially appearing"]; *Citizens Against Rent Control v. City of Berkeley* (1986) 181 Cal.App.3d 213, 230 [winning challenge to ordinance limiting campaign contributions does not show measure that could adversely affect plaintiffs would fail].)

As Malaga notes, the trial court was presented with arguments that Malaga's recovery was speculative in this case as well. Yet it found that despite Malaga's arguments and claims of supporting evidence, there was a direct, immediate, and substantial monetary benefit for Malaga to litigate in the form of an existing $1,036,728 civil penalty that, if left unchallenged, would severely deplete Malaga's finances. The court's conclusion that Malaga's financial interest was direct, immediate, and substantial demonstrates that it did consider Malaga's arguments but rejected them. We find no basis to conclude, therefore, that the trial court applied an incorrect legal standard with respect to determining Malaga's financial interests.

### *The Trial Court Did Not Abuse Its Discretion*

Malaga's legal standards argument overlaps with several positions that suggest Malaga is also challenging the trial court's determination, under the proper legal framework, that Malaga's financial interest was not, in fact, speculative in nature. Malaga argues, for example, that the trial court's determination that setting aside the existing fine was a direct and immediate financial benefit had "no rational basis" because further proceedings could occur resulting in increased fines and that "Malaga neither expected nor received any direct pecuniary benefit from" the mandate proceeding. Malaga recognizes the case law supports denying fees where "the failure to litigate would have resulted in losses of money or value to their assets or investments" but contends this is not the case here because "[s]uccessfully overturning the penalty, did not by itself give Malaga any direct financial benefit." Ultimately, Malaga argues the trial court erred in assigning any value to the proposed penalties because the flaws in the system used to

impose them meant those fines were "make believe" and "imaginary" and, therefore, of zero actual value. We do not agree.

Malaga's arguments focus exclusively on the actual result obtained, a remand forcing the Water Quality Board to comply with the APA if it wishes to continue pursuing penalties against Malaga.[3] However, the analysis required of the trial court is broader, asking the court to consider "any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield." (*Boatworks*, *supra*, 35 Cal.App.5th at p. 309.) While actual gains earned are one measure of that value, the court may also consider the value of the case at the time vital litigation decisions were being made. (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1215–1216.)

In this case, Malaga's litigation asserted several potential grounds that could fully set aside more than $1 million in imposed fines and further sought to obtain an injunction barring future enforcement actions. In other words, at the time Malaga made critical decisions in the litigation, it was facing the imposition of substantial fines and hoping not for a remand for further proceedings, but for a full stop to the actions against it—either based on a lack of evidence to support the alleged violations or upon procedural and substantive failings that warranted further injunctive relief. That Malaga's litigation strategy initially resulted in less than its desired outcome[4] does not prevent the trial court

---

[3] In a one-sentence claim, Malaga states that at "minimum, the court should have discounted Malaga's financial interest, if any, based both on the fact that any financial benefit is speculative (since there was no certainty that Malaga would ever avoid liability for a substantial penalty imposed by [the Water Quality] Board) and the fact that success in this litigation was uncertain at the time it was filed." With no citation to record evidence supporting an uncertainty calculation, no substantive legal argument in support of this position, and contradictory statements in its own reply brief that the Water Quality "Board's probability of success in this case was zero," we consider any such argument waived. (See *L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620 [points asserted without reasoned argument or necessary citations to the record will be deemed waived].)

[4] As both Malaga and the Water Quality Board note, although a remand was ordered, the proceedings were eventually ceased altogether.

from valuing the litigation based on the amount of the fines that would have been imposed had Malaga lost.

Nor does the evidence require finding such a valuation too speculative to support the trial court's analysis. Although subjected to a flawed administrative hearing, Malaga's fine had been imposed after notice and a hearing that definitively set the amount of the fine and required payment from Malaga unless set aside by the courts. In this way the trial court could reasonably find, based on the evidence, that Malaga's fine was not imaginary or make believe, but that it was a real threat to Malaga's ability to operate. The court's ruling was thus in line with those cases cited by the trial court in its order and distinguished in *People v. Investco Management & Development LLC*, *supra*, 22 Cal.App.5th at page 470, where "the prevailing plaintiffs had sufficient financial incentives to warrant their decisions to incur litigation costs, despite the absence of a monetary award, because the failure to litigate would have resulted in losses of money." We find no abuse of discretion in the court's valuation of Malaga's financial motivation to litigate and, therefore, no error in the court's denial of the request for attorney fees.

## DISPOSITION

The order is affirmed. Each party shall bear its own costs.

HILL, P. J.

WE CONCUR:

LEVY, J.

DETJEN, J.

10.